UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE PAGAN,

    Plaintiff,

v.                      Case No: 8:21-cv-1095-VMC-JSS

WAL-MART ASSOCIATES, INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Wal-Mart Associates, Inc.'s Motion to Dismiss the Amended Complaint (Doc. # 12), filed on June 10, 2021. Plaintiff Jose Pagan responded on June 24, 2021. (Doc. # 15). For the reasons below, the Motion is denied.

**I.    Background**

According to the operative complaint, Plaintiff Jose Pagan worked for Defendant Wal-Mart Associates, Inc. from February 26, 2018, through March 13, 2020, as a sales floor associate. (Doc. # 7 at ¶ 12). Pagan is a male who is in a same-sex relationship. (Id. at ¶¶ 15-16).

While he was employed at Wal-Mart, one of Pagan's co-managers, "Roselin," commented that "she did not approve of [Pagan's] lifestyle." (Id. at ¶ 14). Specifically, Roselin

1

disparaged Pagan for "lacking stereotypical male characteristics," "being gay," and "dress[ing] like a girl." (Id. at ¶¶ 14-15). Roselin "made it known that she did not appreciate the way [Pagan] dressed and wanted [Pagan] to change to dress more like a man." (Id.).

Pagan "first complained about [this] discrimination/harassment to upper [Wal-Mart] management around November 2019. [Pagan] complained to the ethics hotline about the discriminatory comments and the unequal treatment . . . but nothing was done, nor did [Pagan] get a response." (Id. at ¶ 17).

In December 2019, Pagan "needed a few days off . . . for [his] same sex marriage." (Id. at ¶ 16). Roselin "denied this [request] because she said, '[I]n the eyes of God that is abominable.'" (Id.). Pagan complained a second time "via the ethics hotline . . . around December 2019, regarding [these] discriminatory comments and [this] unequal treatment . . . [Pagan] was instructed to just fix the issue in the store himself." (Id. at ¶ 18). Pagan then made a third complaint by "[bringing] the discrimination/harassment to the attention of Nathan, the store manager . . . but again nothing was done." (Id. at ¶ 19). Subsequently, "on or about December 24, 2019," "[Pagan] filed his fourth complaint with upper management via

the ethics hotline." (Id. at ¶ 20). "This time, management outside the store location [] instructed Co-Manager Roselin [] to approve [Pagan's] days off for [his] same sex wedding." (Id.).

"At this point, the retaliation began as it was the first time Co-Manager Roselin learned of [Pagan's] complaints of discrimination and harassment." (Id. at ¶ 21). "For example, Co-Manager Roselin would follow [Pagan] to the bathroom asking [Pagan] why [he] complained to the Ethics Line[,] which was never done before [Pagan's] [fourth] complaint of discrimination to upper management." (Id. at ¶ 22). Roselin also began "approach[ing] [Pagan] in an aggressive manner, starting fights with [Pagan], yelling at [Pagan] accusing him of not doing his job during his lunch and other breaks, which was never done before [Pagan's] [fourth] complaint of discrimination to upper management." (Id. at ¶ 23).

Additionally, "[Pagan] was approved for medical leave from March [5,] 2020 to March 14, 2020." (Id. at ¶ 25). Roselin "demanded that [Pagan] return[] to work prior to the expiration of medical leave that was approved by the third party administers of [Wal-Mart's] medical leave policies." (Id. at ¶ 24). Pagan returned to work as requested, but Roselin terminated his employment on March 13, 2020. (Id. at

3

¶ 25).

Based on this conduct, Pagan filed a complaint in state court alleging retaliation (Count 1), discrimination based on sexual orientation (Count 3), discrimination based on religion (Count 4), discrimination based on sex (Count 7), and discrimination based on disability (Count 9) under the Florida Civil Rights Act (FCRA), retaliation (Count 2), discrimination based on sexual orientation (Count 5), discrimination based on religion (Count 6), and discrimination based on sex (Count 8) under Title VII of the Civil Rights Act, and discrimination based on disability under the Americans with Disabilities Act (ADA) (Count 10). (Doc. # 1-1).

Wal-Mart removed the case to federal court on May 6, 2021. (Doc. # 1). Pagan filed an amended complaint on May 27, 2021, narrowing his allegations to retaliation under the FCRA (Count 1), retaliation under Title VII (Count 2), discrimination based on sex under the FCRA (Count 3), and discrimination based on sex under Title VII (Count 4). (Doc. # 7).

Now, Wal-Mart moves to dismiss the amended complaint for failure to state a claim. (Doc. # 12). Pagan has responded (Doc. # 15) and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

In its Motion, Wal-Mart makes two arguments in favor of dismissal: (1) that the amended complaint is not a "short and plain statement of the claim," but instead "a quintessential 'shotgun' pleading that repeats every factual allegation under each count"; and (2) that the retaliation claims (Counts 1 and 2) must fail because "there is no causal connection between [Pagan's] alleged engagement in a protected activity and [his] termination." (Doc. # 12 at 2-3). The Court addresses each argument in turn.

#### 1. Shotgun Pleading

First, Wal-Mart moves to dismiss the amended complaint as an impermissible shotgun pleading. (Id. at 5). The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible

6

for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

Wal-Mart argues that Pagan's amended complaint is a shotgun pleading because "each count [of the amended complaint] incorporates all of the same factual allegations." (Doc. # 12 at 7). According to Wal-Mart,

> it is virtually impossible to know which allegations of fact are intended to support which claims alleged in [Pagan's] Amended Complaint . . Reading through [the] Amended Complaint requires the reader to read the same paragraphs on numerous occasions - because they are all incorporated into each count - and then parse through each of the allegations to identify those that have some relevance to that particular cause of action.

(Id. at 7-8). Wal-Mart concludes that Pagan's allegations are "disorganized, confusing, and impermissibly vague and they do not apprise [Wal-Mart], or the Court, of the claims asserted against [Wal-Mart]." (Id.).

The Court disagrees. First, none of the counts in the amended complaint incorporate the allegations of prior counts. The only paragraphs incorporated into each count are

7

1 through 8, which cover the demand for a jury trial and the "parties, venue and jurisdiction" section. (Doc. # 7). This is perfectly acceptable "so long as the counts do not incorporate the allegations of the previous counts." <u>Alvarez v. Lakeland Area Mass Transit Dist.</u>, No. 8:19-cv-1044-VMC-SPF, 2019 WL 2868943, at *3 (M.D. Fla. July 3, 2019); <u>see also</u> <u>Weiland</u>, 792 F.3d at 1324 (11th Cir. 2015) ("[Plaintiff's] re-alleging of paragraphs 1 through 49 [from the fact section] at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not."). Dismissal is not warranted on this ground.

Second, although the amended complaint reiterates the same factual allegations in each count, the repetition "is not [] so extensive or confused as to make it impossible to determine what is being alleged or against whom." <u>Streeter v. City of Pensacola</u>, No. 3:05CV286/MCR, 2007 WL 4468705, at *2 (N.D. Fla. Dec. 18, 2007). On the contrary, Pagan's amended complaint identifies with specificity the supervisor who allegedly discriminated and retaliated against him (Roselin), the subject matter of the alleged discrimination (his sexual orientation), the alleged protected conduct (his complaints to upper management), the alleged retaliatory conduct (increased harassment and his eventual termination) and the

8

alleged time-period of the discriminatory and retaliatory conduct (roughly December 24, 2019 through March 13, 2020). (Doc. # 7). The Court is satisfied that from these allegations, "a single legal theory pertaining to each count is now reasonably identifiable, especially when the text is considered together with the individual heading for each count." Streeter, 2007 WL 4468705, at *2 (declining to dismiss a complaint containing discrimination and retaliation claims as a shotgun pleading despite the allegations tending to be "overly broad" and "repetitive").

Furthermore, as Pagan points out, "Count 1 is a claim for retaliation under the FCRA, which is patterned on (uses the same case law and standard of law) as Count 2, the claim for retaliation under Title VII," and "Count 3 is a claim for discrimination under the FCRA, which is patterned on (uses the same case law plus standard of law) as Count 4, the claim for retaliation under Title VII." (Doc. # 15 at 3). Therefore, some repetition is understandable and indeed, to a certain point, unavoidable.

Although the amended complaint may have benefited from more clarity or succinctness, "[t]he allegations are not so vague or ambiguous that a responsive pleading could not possibly be framed." Streeter, 2007 WL 4468705, at *2. Wal-

9

Mart's first argument is thus not grounds for dismissal and the Motion is denied as to this request.

### 2. Retaliation Claims

Next, Wal-Mart requests dismissal of Counts 1 and 2 of the amended complaint because Pagan "fails to state a claim of retaliation under either the FCRA or Title VII." (Doc. # 12 at 8).

To state a claim for retaliation under Title VII, Pagan must allege that "(1) [he] engaged in statutorily protected activity; (2) [he] suffered a materially adverse employment action; and (3) there was a causal link between the two." Dixon v. The Hallmark Companies, Inc., 627 F.3d 849, 856 (11th Cir. 2010) (internal citation omitted). "Decisions construing Title VII guide the analysis under the FCRA [], which was patterned after Title VII . . . Therefore, the Court's analysis of [Pagan's] Title VII claims is equally applicable to [Pagan's] FCRA claims." Dalberiste v. GLE Assocs., Inc., No. 18-CV-62276, 2021 WL 966009, at *1 (S.D. Fla. Mar. 5, 2021), report and recommendation adopted, No. 18-62276-CIV, 2021 WL 965771 (S.D. Fla. Mar. 15, 2021).

In its Motion, Wal-Mart does not contest that Pagan engaged in protected activity and suffered an adverse employment action. (Doc. # 12 at 8-11). Wal-Mart's only

10

challenge to Counts 1 and 2 is that Pagan fails to satisfy the third element of causation. (Id.). According to Wal-Mart, the "sole basis" for Pagan's retaliation claims is temporal proximity. (Id. at 10). But Wal-Mart points out that "there is a four-month gap in time between November 2019 and March 2020." (Id. at 9). Wal-Mart contends that this lapse is "too long to permit an inference of causation based on temporal proximity alone." (Id.).

In response, Pagan emphasizes the timeline alleged in the amended complaint. (Doc. # 15 at 3-4). According to Pagan, he complained about discrimination to upper management four times, beginning in November 2019. (Doc. # 7 at ¶¶ 17-20). But the first time he complained, "nothing was done," the second time he "was instructed to just fix the issue in the store himself," and the third time "again nothing was done." (Id. at ¶¶ 17-19). Only after Pagan complained the fourth time, around December 24, 2019, does he allege that upper management "instructed Co-Manager Roselin[] to approve [Pagan's] days off work for [Pagan's] same sex wedding." (Id. at ¶¶ 20-21). According to Pagan, it was only "[a]t this point" that "Roselin learned of [Pagan's] complaints of discrimination and harassment," and it was only at this point "the retaliation began." (Id.).

11

Specifically, although Roselin had previously expressed disapproval of Pagan's "lifestyle," and generally "made it known that she did not appreciate the way Plaintiff dressed and wanted Plaintiff to change to dress more like a man," (Id. at ¶¶ 14-15), it was only after she learned of Pagan's complaints to upper management that she "would follow [Pagan] to the bathroom asking [Pagan] why [he] complained to the Ethics Line." (Id. at ¶ 22).

Furthermore, it was only after Roselin learned of the complaints that she began "approach[ing] [Pagan] in an aggressive manner, starting fights with [Pagan], [and] yelling at [Pagan] accusing [him] of not doing his job during his lunch and other breaks." (Id. at ¶ 23). Per Pagan's timeline, "[this] was never done before [Pagan's] [fourth] complaint of discrimination to upper management." (Id.). Pagan concludes that the "the totality of the circumstances" demonstrate that "retaliation began at the first moment that Co-manager Roselin's attention was called [to] [Pagan's] protected activity." (Doc. # 15 at 5, 9).

Although the Eleventh Circuit has held that "the lapse of three months between [a defendant's] alleged discovery of [a plaintiff's] statutorily protected expression and the adverse employment action is too long to permit an inference

12

of causation based on temporal proximity **alone**," Gilliam v. U.S. Dep't of Veterans Affs., 822 F. App'x 985, 990 (11th Cir. 2020) (emphasis added), the Court agrees that this timeline is sufficient to plausibly allege a causal connection between Roselin learning of Pagan's complaints and her later adverse employment actions. "[C]lose temporal proximity is only one of several methods of demonstrating a causal connection. Therefore, a court cannot simply engage in a rote evaluation of [a] time lag in evaluating the sufficiency of a retaliation claim, but instead must read the complaint holistically and take into account relevant context." Conde v. Int'l Bhd. of Teamsters Loc. Union 728, No. 1:17-cv-78-TWTJCF, 2017 WL 1395519, at *6 (N.D. Ga. Mar. 24, 2017), report and recommendation adopted sub nom. Conde v. Truck Drivers & Helper Loc. 728 & Affiliates, No. 1:17-cv-78-TWT, 2017 WL 1376238 (N.D. Ga. Apr. 17, 2017) (internal citations and quotation marks omitted).

Indeed, even "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997); see also Adetuyi v. City & Cnty. of San Francisco, 63 F. Supp. 3d 1073, 1090 (N.D. Cal.

13

2014) ("[A] pattern of ongoing retaliation following protected conduct supports a finding of causation.") (citing Wood v. Dollar Rent-A-Car Sys., Inc., 128 F. App'x 620, 622 (9th Cir. 2005)).

Taking Pagan's allegations as true, Roselin frequently commented on Pagan's sexual orientation prior to learning of his complaint. But it was only after she learned of complaints to upper management that she escalated the situation by following him to the bathroom, aggressively starting fights and yelling at him, and harassing him about "not doing his job" during breaks. (Doc. # 7 at ¶ 27). This behavior allegedly continued until Pagan's termination in March. (Id. at ¶¶ 24-26). "To show causation, a plaintiff in a retaliation case need prove only that retaliatory animus was one factor in the adverse employment decision." Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1182 (11th Cir. 2010) (internal citation omitted). Taking all reasonable inferences in favor of Pagan, the Court agrees that Roselin's change in behavior after she discovered Pagan's complaints, in combination with temporal proximity, supports an inference that Pagan's termination in March was at least partially motivated by retaliatory animus.

Pagan's allegations thus sufficiently state a plausible

claim for retaliation under both the FCRA and Title VII. The Motion is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Wal-Mart Associates, Inc.'s Motion to Dismiss the Amended Complaint (Doc. # 12) is **DENIED.**

(2) Wal-Mart's answer to the amended complaint is due fourteen days from the date of this Order, August 10, 2021.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of July, 2021.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

15